UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
NATIONAL ASSOCIATION OF                             )
CONSUMER ADVOCATES,                                 )
                                                    )
            Plaintiff,                              )
                                                    )
      v.                                            )      Civil Action No. 24-3218 (PLF)
                                                    )
RENTGROW, INC., and                                 )
YARDI SYSTEMS, INC.,                                )
                                                    )
            Defendants.                             )
_____)


OPINION AND ORDER

        The National Association of Consumer Advocates ("NACA" or "plaintiff") has

brought this action "on behalf of the general public of D.C. consumers" against RentGrow, Inc.

and Yardi Systems, Inc. (collectively, "defendants").  See Complaint [Dkt. No. 1-1] ¶ 89.

Plaintiff's complaint alleges that defendants' "unfair or deceptive trade practices" violate the

District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901,

et seq.  See id. ¶¶ 92, 95.  Plaintiff seeks declaratory and injunctive relief.  See id. ¶¶ 84, 85.

        Plaintiff originally brought this suit in the Superior Court of the District of

Columbia, but defendants removed it to this Court.  See Notice of Removal ("Notice")

[Dkt. No. 1].  Plaintiff now seeks to have the case remanded to the Superior Court.  See

Memorandum of Points and Authorities in Support of Plaintiff's Motion to Remand ("Pl. Mot.")

[Dkt. No. 12-1].

Upon careful consideration of the parties' briefs and the relevant legal authorities, the Court will grant plaintiff's motion to remand. [1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a national nonprofit association of "attorneys, law professors, law students, and consumer advocates committed to representing consumers' interests."  See Complaint ¶ 10.  On October 1, 2024, plaintiff filed a complaint against defendants in the Superior Court of the District of Columbia for violations of the CPPA, D.C. Code § 28-3901, et seq.  See id. ¶ 95.  Plaintiff filed this action under a provision of the CPPA that allows a "public interest organization" to sue in the Superior Court to enforce certain consumer protection laws when acting "in the interests of a consumer or a class of consumers."  See id. ¶¶ 68, 69; D.C. Code § 28-3905(k)(1)(D)(i).  This CPPA provision was adopted by the D.C. Council in 2013.  See Consumer Protection Act of 2012, D.C. Act 19-647 § 2(b)(3) (Jan. 25, 2013).

Plaintiff brought the case to enforce the CPPA "on behalf of the general public of D.C. consumers."  See Complaint ¶ 89.  Plaintiff alleges that defendant Yardi Systems, Inc. engages in "unfair or deceptive trade practices" related to a tenant screening service (the "Service") that operates under its wholly-owned subsidiary, defendant RentGrow, Inc. ("RentGrow").  See id. ¶¶ 1, 92-102.  Specifically, plaintiff alleges that the Service "generates [tenant screening] reports based improperly on inaccurate and/or biased information, which negatively impacts individuals in the District [of Columbia] who need a RentGrow report to

---

[1]     The papers reviewed in connection with this motion include the following: Notice of Removal ("Notice") [Dkt. No. 1]; Complaint [Dkt. No. 1-1]; Memorandum of Points and Authorities in Support of Plaintiff's Motion to Remand ("Pl. Mot.") [Dkt. No. 12-1]; Defendants' Opposition to Plaintiff's Motion to Remand ("Defs. Opp.") [Dkt. No. 23]; and Plaintiff's Reply In Further Support of Its Motion to Remand ("Pl. Rep.") [Dkt. No. 26].

obtain housing." Id. ¶ 2. Plaintiff further contends that despite the allegedly "inaccurate and/or biased information" generated by the Service, RentGrow continues to market the Service as an effective means for evaluating rental applicants under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., in violation of the CPPA. See Complaint ¶¶ 2, 3. Plaintiff seeks a declaration that defendants' conduct is in violation of the CPPA and an order enjoining defendants' conduct found to be in violation of the CPPA. See id. at 25. Plaintiff also requests costs, including reasonable attorneys' fees, expert fees, and prejudgment interest at the maximum rate allowed by law. See id. at 26.

On November 14, 2024, defendants filed a notice of removal from the Superior Court of the District of Columbia to this Court, asserting federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441. See Notice at 1. In their Notice, defendants assert that plaintiff's CPPA claim "arises under federal law" for purposes of federal question jurisdiction because plaintiff's CPPA claim is premised on "alleged violations of the FCRA," a federal statute. Id. ¶¶ 3, 4; see 28 U.S.C. § 1331. Defendants contend that plaintiff's CPPA claim therefore "necessarily raises a stated federal issue, actually disputed and substantial, which this federal forum may entertain." Notice ¶ 4. (quoting Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)) (internal quotations and alterations omitted).

On December 13, 2024, plaintiff moved to remand this case back to the Superior Court of the District of Columbia. See Pl. Mot. In its motion, plaintiff "assumes the somewhat odd posture of disclaiming its own [Article III] standing." Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co., LLC ("Gemini"), Civil Action No. 24-2356 (JDB), 2024 WL 4817122, at *1 (D.D.C. Nov. 18, 2024); see also Pl. Mot. at 4-8. Defendants, in their opposition, assume the burden of insisting that plaintiff does have Article III standing to sue in federal court. See Defs.

Opp. at 6-13.  Defendants argue that plaintiff has associational standing to sue on behalf of its

D.C. consumer members and relator standing to the same extent as it would under analogous

qui tam statutes.  See Defs. Opp. at 6-13.

The Court concludes that defendants have not met their burden of proving

plaintiff's Article III standing.  The Court therefore will grant plaintiff's motion to remand.

## II.  LEGAL STANDARD

The D.C. Circuit has explained that "[w]hen it appears that a district court lacks

subject matter jurisdiction over a case that has been removed from a state court, the district court

must remand the case."  Republic of Venezuela v. Philip Morris Inc., 287 F.3d 192, 196

(D.C. Cir. 2002) (emphasis added).  For this Court to have subject matter jurisdiction, the

plaintiff must have standing to advance its case in a federal court.  See Attias v. Carefirst,

Inc., 865 F.3d 620, 624 (D.C. Cir. 2017) (citing Lujan v. Defenders of Wildlife, 504

U.S. 555, 560-61 (1992) (identifying the plaintiff's Article III standing as an element of federal

courts' jurisdiction)).  The burden of establishing standing rests with "[t]he party invoking

federal jurisdiction."  Lujan v. Defenders of Wildlife, 504 U.S. at 561; see also TransUnion

LLC v. Ramirez, 594 U.S. 413, 430-31 (2021).  Therefore, "when a defendant removes a case to

federal court and seeks to proceed there over the plaintiff's objection, the burden of showing that

the plaintiff has standing rests with the defendant."  See Travelers United, Inc. v. Hyatt Hotels

Corp. ("Travelers United v. Hyatt"), Civil Action No. 23-2776 (CKK), 2025 WL 27162, at *6

(D.D.C. Jan. 3, 2025); see also Gemini, 2024 WL 4817122, at *1 (finding that the

defendant assumes the burden of proving that the plaintiff has Article III standing if the

defendant opposes remand).

III. DISCUSSION

Standing is a threshold issue:  if standing is absent, then the Court lacks subject matter jurisdiction and the case must be remanded.  See supra at 4.  An organizational plaintiff can demonstrate standing either by organizational standing, showing injury to itself, or by associational standing, showing "a cognizable injury to one or more of its members." Robertson v. District of Columbia ("Robertson"), Civil Action No. 24-0656 (PLF), 2025 WL 211056, at *4 (D.D.C. Jan. 16, 2025) (quoting Kingman v. Park Civic Ass'n v. Bowser, 815 F.3d 36, 39 (D.C. Cir. 2016)).  Neither party contends that plaintiff has organizational standing to advance its claims, so the only viable path to satisfying Article III in this case is associational standing.  See Pl. Mot. at 4-8; Defs. Opp. at 6-13.[2]

To assert associational standing on behalf of its individual members, an organization must show that it "qualifies as a membership association."  Viasat, Inc. v. F.C.C. ("Viasat"), 47 F.4th 769, 781 (D.C. Cir. 2022).  A "voluntary membership organization with identifiable members" that "represents [its members] in good faith," may assert associational standing on behalf of its members.  See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 201 (2023).  An organization may also assert associational standing on behalf of non-members if it has the "indicia of a traditional

---

[2]     Defendants argue that plaintiff also has Article III standing as a relator, akin to the standing conferred under "analogous" qui tam statutes like the False Claims Act, 31 U.S.C. § 3729 et seq.  See Defs. Opp. at 12-13.  In qui tam actions, the relator stands in the shoes of the government to pursue the government's claims and assert the government's injuries against the defendant.  See U.S. ex rel. O'Connor v. USCC Wireless Inv., Inc., 128 F.4th 276, 281 (D.C. Cir. 2025).  In contrast, plaintiff does not—and indeed, could not—assert the government's own injury or claim against defendants because the CPPA is not a qui tam statute. The Court therefore is not persuaded by defendants' attempt to analogize a suit "to remedy an injury in fact suffered by a . . . class of consumers" and a suit "to remedy an injury in fact suffered by the United States."  See Defs. Opp. at 13; Pl. Rep. at 14.

membership association."  Viasat, 47 F.4th at 781 (quoting Sorenson Commc'ns v. F.C.C ("Sorenson"), 897 F.3d 214, 225 (D.C. Cir. 2018)).  Put another way, an organization may assert associational standing on behalf of non-members if those non-members "possess all the indicia of membership" in the organization, such as playing a role in selecting the organization's leadership, guiding the organization's activities, or financing the organization's activities. Hunt v. Washington State Apple Advert. Comm'n ("Hunt"), 432 U.S. 333, 344-45 (1977).

    The purpose of the "indicia of membership" test is to determine whether "an organization has the appropriate relationship with non-members to sue on their behalf."  In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 110 F.4th 295, 311 (1st Cir. 2024) (citing Friends of the Earth, Inc. v. Chevron Chem. Co., 129 F.3d 826, 828 (5th Cir. 1997)); see also Flyers Rts. Educ. Fund, Inc. v. U.S. Dep't of Transp. ("Flyers Rts. Educ. Fund"), 957 F.3d 1359, 1362 (D.C. Cir. 2020) (holding that the "indicia of membership test" is satisfied where non-member constituents have "a sufficient amount of interaction" with the organization "to influence [its] activities"); Doe v. Stincer, 175 F.3d 879, 886 (11th Cir. 1999) (holding that the "indicia of membership" test is satisfied when an organization's constituents "possess the means to influence the priorities and activities the [organization] undertakes").  The "indicia of membership" test therefore is not satisfied by non-members that simply "read [an organization's] publications, subscribe to its e-mail list, or follow its Facebook page."  Viasat, 47 F.4th at 781 (citing Sorenson, 897 F.3d at 225 and Gettman v. DEA, 290 F.3d 430, 435 (D.C. Cir. 2002)).

    Once these threshold requirements have been met, organizations must also satisfy all three prongs of the associational standing test established by the Supreme Court in Hunt.  See Robertson, 2025 WL 211056, at *4 (citing Hunt, 432 U.S. 343); see also Viasat, 47 F.4th at 781; Travelers United v. Hyatt, 2025 WL 27162, at *12.  Under Hunt, an organization has

associational standing if (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343; see also Tanner-Brown v. Haaland, 105 F.4th 437, 447 (D.C. Cir. 2024). The first two prongs of this test are constitutional requirements rooted in Article III, while Congress may modify the third prong through legislation. See United Food & Commercial Workers Union Local v. Brown Group, Inc. ("United Food & Comm. Workers Union"), 517 U.S. 544, 556-57; Tanner-Brown v. Haaland, 105 F.4th at 447. But "all three requirements are jurisdictional, and unless each is satisfied—or, in the case of the third requirement, abrogated by an act of Congress—associational standing is not a valid basis for a federal court's exercise of subject matter jurisdiction over the case." Travelers United v. Hyatt, 2025 WL 27162, at *12 (citing Tanner-Brown, 105 F.4th at 447).

Hunt's three-prong associational standing test is premised on the assumption that an organization is litigating on behalf of its members. See Am. Legal Found. v. F.C.C., 808 F.2d 84, 89 (D.C. Cir. 1987). So when an organization litigates on behalf of non-members, as plaintiff has done here, associational standing can only exist if plaintiff has the "indicia of a traditional membership association," as discussed supra at 5-6. The Court concludes that defendants have not met their burden of proving that plaintiff has associational standing. First, defendants failed to allege that plaintiff is a qualifying "membership association," which is a threshold requirement for demonstrating associational standing. See Viasat, 47 F.4th at 781. Second, even if defendants had sufficiently alleged that plaintiff is a qualifying "membership association," they failed to demonstrate that plaintiff satisfies the third prong of Hunt's associational standing test. Hunt, 432 U.S. at 344-45.

A.  *Defendants Failed to Allege That Plaintiff Qualifies as a Membership Association*

Plaintiff argues that it lacks associational standing because it is bringing suit "on behalf of the general public of D.C. consumers," not itself or its members.  See Pl. Mot. at 4-6; see also Complaint ¶ 89.  First, plaintiff notes that it brought suit under a particular provision of the CPPA, D.C. Code § 28-3905(k)(l)(D)(i), which empowers "public interest organization[s]" to bring suit in the Superior Court of the District of Columbia "on behalf of the interests of a consumer or a class of consumers," even absent an injury to the organization or its members.  See Pl. Mot. at 4; Complaint ¶¶ 68, 69.  But plaintiff asserts that when a CPPA case is removed to federal court, the plaintiff must satisfy the traditional Article III requirements for standing.  See Pl. Mot. at 4.  Plaintiff then notes that its complaint "alleges no injury to [plaintiff]," Pl. Mot. at 2, "makes no mention whatsoever to [plaintiff's] members," id. at 6, and "disclaim[s] acting on behalf of specific consumers."  Id.; see also Complaint ¶¶ 82, 89.  In its reply, plaintiff argues that defendants have failed to establish that plaintiff is either a "voluntary membership organization with identifiable members that represents its members in good faith," or that it "has the indicia of a traditional membership association."  Pl. Rep. at 6 (quoting Travelers United v. Hyatt, 2025 WL 27162, at *11) (alterations and internal quotations omitted).  For these reasons, plaintiff argues, this Court cannot "proceed based on federal standing."  Id.[3]

---

[3]    Plaintiff also notes that defendants' Notice of Removal asserts "only one ground for federal jurisdiction: a theory that [plaintiff] has stated 'state-law claims that implicate significant federal issues.'"  Pl. Rep. at 3-4 (quoting Notice ¶ 9).  Plaintiff argues that defendants therefore have "waived" their "after-the-fact arguments for establishing Article III standing."  Id.  Defendants counter that the absence of a standing argument in its Notice is not "fatal to its effort to remove this case in the first instance."  Defs. Opp. at 6 n.2.  The Court need not reach this issue because defendants' associational standing arguments fail on the merits.

Defendants counter that plaintiff has associational standing. First, defendants reiterate Hunt's three-prong associational standing test: to establish associational standing, an organization must show that "(1) at least one of its members would have standing to sue in his own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit." Defs. Opp. at 6-7 (quoting Am. Trucking Ass'ns, Inc. v. Fed. Motor Carrier Safety Admin., 724 F.3d 243, 247 (D.C. Cir. 2013)); see also Hunt, 432 U.S. at 343. Citing to the allegations in plaintiff's complaint for support, defendants claim that the second and third prongs are met. See Defs. Opp. at 7 (citing Complaint ¶¶ 10, 82). Defendants argue that the question of whether plaintiff has associational standing thus turns on the first prong: "whether at least one of [plaintiff's] members could have standing to sue RentGrow directly." Defs. Opp. at 7.

To demonstrate that this first prong is met—that plaintiff's members would have standing to sue in their own right—defendants submitted a declaration from Shawn Mihill, an in-house attorney for RentGrow. See Declaration of Shawn Mihill in Support of Opposition to Plaintiff's Motion to Remand ("Mihill Decl.") [Dkt. No. 23-1]. In his declaration, Mr. Mihill claimed to have identified two D.C.-based NACA members who "appear to have been screened by RentGrow in 2023." Mihill Decl. ¶ 6; see also Defs. Opp. at 10. Defendants assert that these two alleged NACA members "were subject to RentGrow's allegedly inaccurate marketing and tenant screening practices," and therefore are among the consumers on whose behalf plaintiff brought the lawsuit—that is, D.C. consumers who have been harmed by defendants. Defs. Opp. at 8. Defendants conclude that these two members have standing to sue defendants in their own right, satisfying the first element for associational standing. See id. at 7-8.

The defendants have put the cart before the horse.  Before assessing whether an organization satisfies Hunt's three-prong associational standing test, the party supporting removal and resisting remand must first address the threshold question of whether plaintiff "qualifies as a membership association" at all for purposes of associational standing.  Viasat, 47 F.4th at 781; see also Travelers United, Inc. v. Hilton Worldwide Holdings Inc. ("Travelers United v. Hilton"), 2024 U.S. Dist. LEXIS 101509, at *25 (Jun. 7, 2024); Pl. Rep. at 6.  This question turns on considerations such as whether the individuals the organization purports to represent "finance the organization, guide its activities, or select its leadership."  Viasat, 47 F.4th at 781.  Again, "it is not enough for [those individuals] simply to read a group's publications, subscribe to its e-mail list, or follow its Facebook page."  Id.  In Viasat, for example, the D.C. Circuit found that an environmental group that provided "no insight into how it relates with its members" fell short of demonstrating associational standing because the affidavits submitted by two purported group members did not "describe[] involvement in the Group beyond a bare assertion of membership."  Id. at 781-82.

Defendants do not address—either in their Notice of Removal or their opposition—whether plaintiff "qualifies as a membership association" for purposes of associational standing.  See generally Notice; Defs. Opp.  Indeed, defendants have no factual basis to make such an assertion because plaintiff's complaint does not provide any information about how plaintiff relates to the D.C. consumers on whose behalf it acts.  There is no evidence proffered by plaintiff or defendants that D.C. consumers pay dues to plaintiff, vote on plaintiff's leadership, or otherwise guide plaintiff's operation in a manner indicative of a "traditional membership association."  Viasat, 47 F.4th 781 (quoting Sorenson, 897 F.3d at 225); see generally Complaint; Pl. Mot.  Though defendants claim to have identified two of plaintiff's

D.C.-based members whose rental applications were allegedly screened by RentGrow, see Mihill Decl. ¶ 6; Defs. Opp. at 7-8, defendants do not assert that those two alleged members—or any of plaintiff's members—finance plaintiff, select plaintiff's leadership, or guide plaintiff's activities.

Here, as in Viasat, the Court is "left with no basis to determine whether" this threshold element of associational standing has been met because defendants have not sufficiently alleged that plaintiff "qualifies as a membership association."  See Viasat, 47 F.4th at 781-782; see also Travelers United v. Hilton, 2024 U.S. Dist. LEXIS 101509, at *25-28 (finding plaintiff lacked associational standing to sue on behalf of travel consumers in part because the defendant failed to demonstrate that the plaintiff qualifies as a membership association); see also Gettman v. DEA, 290 F.3d at 435 (finding magazine lacked associational standing to sue on behalf of its "readers and subscribers" because there was no evidence that "its readers and subscribers played any role in selecting its leadership, guiding its activities, or financing those activities."); Am. Legal Found. v. F.C.C., 808 F.2d at 90 (declining to conclude that plaintiff was the functional equivalent of a traditional membership organization where it did not appear from the record that plaintiff's "supporters" played any role in selecting plaintiff's leadership, guiding its activities, or financing its activities); Sorenson, 897 F.3d at 225 (dismissing for lack of associational standing where, among other deficiencies, record was "unclear" whether plaintiff is "the sort of organization that would qualify as a 'membership association.'" (quoting Am. Legal Found. v. F.C.C., 808 F.2d at 89-90)).

Furthermore, even if plaintiff were a qualifying "membership association," defendants' arguments do not survive Judge Bates' analysis in Gemini.  In Gemini, just as in the instant case, NACA brought its suit in the Superior Court of the District of Columbia on behalf of a particular class of D.C. consumers pursuant to D.C. Code § 28-3905(k)(l)(D)(i), rather than

on behalf of itself or its members. See Gemini, 2024 WL 4817122 at *1. Judge Bates granted

NACA's motion to remand, holding that NACA did not have associational standing to sue in

federal court because the group whose rights it sought to enforce "lack[ed] all the indicia of

membership laid out in Hunt." Id. at *2. Specifically, the purported members of the group on

whose behalf NACA brought suit—D.C. residents who use Gemini—did not "play a role in

selecting [NACA's] leadership, guiding [NACA's] activities, and financing [NACA's]

activities." Id. (citing Hunt, 432 U.S. at 344-45 and AARP v. EEOC, 226 F. Supp. 3d 7, 16

(D.D.C. 2016)). Judge Bates explained that "given NACA's structure" and "national scope," it

is not surprising that a "tiny fraction of [NACA's] constituency" could not "realistically 'steer

the organization's course'" because "[t]heir power over NACA's decisions is so diluted as to be

nearly nonexistent." Id. at *3 (quoting Am. Legal Found. v. F.C.C., 808 F.2d at 90). "NACA, in

other words, is not sufficiently 'subject to the influence of' D.C. Gemini users to enter the

federal courthouse door on their behalf." Id. (quoting Flyers Rts. Educ. Fund, 957 F.3d at 1362).

Plaintiff brings its action "on behalf of the general public, i.e., D.C. consumers

generally." Complaint ¶ 82. The Court easily finds that this group "lacks all the indicia of

membership laid out in Hunt." Gemini, 2024 WL 4817122, at *2. Again, there is no evidence in

the record that the members of this open-ended group—which could conceivably include every

person within the District of Columbia who is a "consumer"—play a role in selecting plaintiff's

leadership, guiding plaintiff's activities, or financing plaintiff's activities. Id. In addition,

plaintiff is a national organization, see Complaint ¶ 10, and the individuals whose rights plaintiff

seeks to enforce are but a "tiny fraction of [plaintiff's] constituency." Gemini, 2024

WL 4817122, at *3. Those individuals therefore could not "realistically 'steer [plaintiff's]

course'" because "their power over [plaintiff's] decisions is so diluted as to be nearly

nonexistent." <u>Gemini</u>, 2024 WL 4817122, at *3 (quoting <u>Am. Legal Found. v. F.C.C.</u>, 808 F.2d at 90).  "[B]eyond broadly purporting to represent consumer interests and generally inviting consumers to share their stories, [plaintiff] does nothing to submit itself to the control of the [D.C.-based consumers] on whose behalf it comes to court." <u>Gemini</u>, 2024 WL 4817122, at *3.[4]

      For these reasons, the Court concludes that defendants have not sufficiently alleged that plaintiff has Article III associational standing.

> ### B.  Defendants Failed to Demonstrate That Plaintiff Satisfies the Member-Participation Prong of <u>Hunt</u>'s Associational Standing Test

      Even assuming, <u>arguendo</u>, that defendants had sufficiently alleged that plaintiff "qualifies as a membership association" for purposes of associational standing and that the first and second prongs of the <u>Hunt</u> associational standing test were satisfied, defendants still would have stumbled on the third prong of the test: the "member-participation" prong.  <u>See</u> Pl. Rep. at 11-13.  To establish associational standing, an organization must show that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

---

[4]      Defendants argue that <u>Gemini</u> is inapposite because the parties in <u>Gemini</u> did not allege that "[NACA's] <u>formal</u> members . . . would have standing to sue." Defs. Opp. at 11 (quoting <u>Gemini</u>, 2024 WL 4817122, at *2).  Here, defendants argue, "several" of plaintiff's <u>formal</u> members have allegedly been "screened by RentGrow . . . and thus have standing to sue." Defs. Opp. at 11.  But defendants once again skip past the threshold inquiry of associational standing—whether the group of individuals on whose behalf plaintiff brings suit "possess all the indicia of membership" in plaintiff.  <u>Hunt</u>, 432 U.S. at 344-45.

      In <u>Gemini</u>, Judge Bates denied NACA associational standing on behalf of a class of D.C. consumers because that group "lack[ed] all the indicia of membership laid out in <u>Hunt</u>." <u>Id.</u> at *2.  Here, plaintiff again seeks to represent a class of D.C. consumers that lack all the indicia of membership laid out in <u>Hunt</u>.  The mere fact that some of plaintiff's formal members may be among the class of D.C. consumers does not confer associational standing to plaintiff because plaintiff does not assert associational standing <u>on its members' behalf</u>.  If the Court were to accept defendants' theory of associational standing, then "any public interest organization with members in the District [of Columbia] would then have associational standing—regardless of whether it asserts or even specifically declines standing on that basis . . . ."  Pl. Rep. at 10.

Hunt, 432 U.S. at 343.  This is the "member-participation" prong.  See Travelers United v. Hyatt, 2025 WL 27162, at *12.  One purpose of the member-participation prong is to "guard against the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity."  Id. (quoting United Food & Comm. Workers Union, 517 U.S. at 556).

   The member-participation inquiry turns on whether the organization's requested relief can be awarded without "individualized proof" from its members.  See Air Transp. Ass'n of Am. v. Reno, 80 F.3d 477, 483 (D.C. Cir. 1996) (quoting Warth v. Seldin, 422 U.S. 490, 515-16 (1975)).  If individualized proof is required to resolve a claim or award relief, the member-participation requirement is not satisfied.  See id.; Warth v. Seldin, 422 U.S. at 515-16 (declining to recognize associational standing to pursue a damages claim when "both the fact and extent of injury would require individualized proof"); Tanner-Brown v. Haaland, 105 F.4th at 447 (declining to recognize associational standing to pursue a claim for an accounting that would require "individualized determinations"); cf. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock, 477 U.S. 274, 287-88 (1986) (recognizing associational standing where the claim "raise[d] a pure question of law" and did not require the district court to make any individualized determinations regarding appropriate remedies for members, which would be made by "the proper state authorities").

   Organizations must satisfy the member-participation prong of the associational standing test unless Congress has, by statute, abrogated the requirement for the claim at issue. See United Food & Comm. Workers Union, 517 U.S. at 556-57; Tanner-Brown v. Haaland, 105 F.4th at 447.  The CPPA provision creating plaintiff's cause of action cannot abrogate the member-participation prong because it was enacted by the D.C. Council, not by Congress.  See

Consumer Protection Act of 2012, D.C. Act 19-647 § 2(b)(3) (Jan. 25, 2013); Pl. Rep. at 11-13; see also Travelers United v. Hyatt, 2025 WL 27162, at *13 (finding that the District of Columbia CPPA cannot abrogate the member-participation requirement "because it is an act of the D.C. Council, not of Congress."); Mark v. Republic of the Sudan, 77 F.4th 892, 896 (D.C. Cir. 2023), cert. denied, 144 S. Ct. 1456 (2024) (holding that the jurisdiction of the federal district courts is within the sole control of Congress, subject only to those limits imposed by the Constitution).

   The Court therefore proceeds to assess each form of relief that plaintiff seeks to determine whether participation from plaintiff's individual members would be required to resolve each one.  See TransUnion LLC v. Ramirez, 594 U.S. at 431 (holding that a party must have standing "for each claim that [it] press[es] and for each form of relief that [it] seek[s]").  Plaintiff seeks injunctive relief in the form of "an order enjoining [d]efendants' conduct found to be in violation of the CPPA" and declaratory relief in the form of "a declaration that [d]efendants' conduct is in violation of the CPPA."  Complaint at 25.  Plaintiff also requests costs, disbursements, and reasonable attorneys' fees.  Id. at 26.  The Court concludes that the participation of plaintiff's individual members would be required, precluding a finding of plaintiff's associational standing.  See Travelers United v. Hyatt, 2025 WL 27162, at *13-16.

   Adjudicating plaintiff's request for injunctive relief will require the participation of plaintiff's individual members.  To have standing to seek an injunction against defendants' alleged trade practices, at least one of plaintiff's members would need to show "a real and immediate threat of repeated injury" from those practices.  See Murthy v. Missouri, 603 U.S. 43, 58 (2024) (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)).  Establishing such injury would require, at minimum, some evidence that at least one of plaintiff's members plans on renting a property and subjecting themself to RentGrow's tenant screening service at a

definite point in the future.  See Pl. Rep. at 12.  Though Mr. Mihill purports to have identified

two of plaintiff's members who have been screened by RentGrow in the past, see Mihill Decl.

¶ 6, neither of those individuals filed a declaration or affidavit alleging that they face a real and

immediate threat of repeated injury.  See O'Shea v. Littleton, 414 U.S. at 495-96 (holding that

"[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding

injunctive relief . . . if unaccompanied by any continuing, present adverse effects"); Lujan v.

Defenders of Wildlife, 504 U.S. at 564 (holding that generalized "'some day' intentions—

without any description of concrete plans, or indeed even any specification of when the some day

will be—do not support a finding of the 'actual or imminent' injury" that is necessary to show

Article III standing).

Because defendants have failed to prove that any of plaintiff's members have

standing to pursue injunctive relief against defendants, if this case proceeds in federal court then

this Court "will eventually need to consider additional, member-specific facts to determine

whether at least one member has standing to seek injunctive relief."  Travelers United v.

Hyatt, 2025 WL 27162, at *16.  The necessity for that "detailed and individualized proof"

precludes a finding of associational standing as to plaintiff's claim for injunctive relief.  Id.

(denying finding of associational standing in part because the defendant failed to show that

plaintiff's request for injunctive relief could proceed without individual member participation).

The same is true with respect to plaintiff's request for declaratory relief.  The Court would

inevitably require "detailed and individualized proof" from plaintiff's members to establish

plaintiff's standing to pursue a "forward-looking" remedy like declaratory relief.  Id.

The Court concludes that none of plaintiff's claims can proceed without the

"participation of individual members in the lawsuit."  Hunt, 432 U.S. at 343.  Plaintiff therefore

lacks associational standing to pursue these claims in federal court.  See id.  And because

plaintiff lacks associational standing to sue on behalf of its members, this Court lacks subject

matter jurisdiction to adjudicate its claims.  See Busic v. Transportation Sec. Admin., 62

F.4th 547, 549 (D.C. Cir. 2023); accord Travelers United v. Hyatt, 2025 WL 27162, at *16;

Travelers United v. Hilton, 2024 U.S. Dist. LEXIS 101509, at *58-59.  This case therefore will

be remanded to the Superior Court of the District of Columbia.  See 28 U.S.C. § 1447(c).

## IV. JURISDICTIONAL DISCOVERY

Defendants request that the Court allow them to conduct jurisdictional discovery

to determine whether plaintiff's members were either screened by RentGrow or "harmed by

RentGrow's screening practices." Defs. Opp. at 8.  Plaintiff opposes defendants' request for

jurisdictional discovery.  See Pl. Rep. at 13.  The Court agrees with plaintiff that jurisdictional

discovery is not warranted and will deny defendants' request.

Federal district courts should permit a party to obtain jurisdictional discovery if

"allegations indicate its likely utility" in determining a party's standing to pursue the case.  See

Nat. Res. Def. Council v. Pena, 147 F.3d 1012, 1024 (D.C. Cir. 1998).  "[I]f a party demonstrates

that it can supplement its jurisdictional allegations through discovery, then jurisdictional

discovery is justified."  Urquhart-Bradley v. Mobley, , 964 F.3d 36, 48 (D.C. Cir. 2020) (quoting

GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351-52 (D.C. Cir. 2000)).  But

such a discovery request "cannot be a 'fishing expedition.'"  Lewis v. Mutond, 62 F.4th 587, 596

(D.C. Cir. 2023) (quoting Bastin v. Fed. Nat'l Mortg. Ass'n, 104 F.3d 1392, 1396 (D.C.

Cir. 1997)).  And "[a] district court acts well within its discretion to deny discovery when no

'facts additional discovery could produce . . . would affect [the] jurisdictional analysis.'"  Id.

at 595 (alteration in original) (quoting Goodman Holdings v. Rafidain Bank, 26 F.3d 1143, 1147 (D.C. Cir. 1994)).  See also Travelers United v. Hyatt, 2025 WL 27162, at *16-17.

       Here, defendants make "no material jurisdictional allegations that it could prove through discovery and that are based on information not currently available to it."  Gemini, 2024 WL 4817122, at *4 (citing Urquhart-Bradley v. Mobley, 964 F.3d at 48).  First, plaintiff did not bring its lawsuit on behalf of itself or its members, so additional information about plaintiff's formal membership is irrelevant on that basis alone.  See Pl. Rep. at 13.  But even if the Court permitted defendants to conduct jurisdictional discovery concerning plaintiff's formal membership, defendants have not explained how discovery would reveal the relationship between plaintiff and its members, or otherwise provide insight into whether plaintiff's members possess the "indicia of membership" laid out in Hunt.  Defendants therefore have not shown any "likely utility" in jurisdictional discovery on this topic.  See Nat. Res. Def. Council, 147 F.3d at 1024.  In the absence of that showing, it appears that jurisdictional discovery on this topic would be an impermissible "fishing expedition."  Lewis v. Mutond, 62 F.4th at 596 (quoting Bastin v. Fed. Nat'l Mortg. Ass'n, 104 F.3d at 1396); see also Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC, 606 F. Supp. 2d 114, 120 (D.D.C. 2009) (declining to order jurisdictional discovery where defendant "has not set forth specific allegations demonstrating how jurisdictional discovery would serve a legitimate purpose" and "fails to explain how there is anything to be gained from" discovery. (citations omitted)).  The Court therefore denies defendants' request for jurisdictional discovery regarding the details of plaintiff's membership.

## V.  CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that plaintiff's Motion to Remand [Dkt. No. 12] is GRANTED;  it is

FURTHER ORDERED that this case is REMANDED to the Superior Court of the District of Columbia; it is

FURTHER ORDERED that defendants' request for jurisdictional discovery is DENIED; it is

FURTHER ORDERED that RentGrow, Inc.'s Motion to Dismiss [Dkt. No. 15] and Yardi Systems, Inc.'s Motion to Dismiss [Dkt. No. 16] are DENIED AS MOOT; and it is

FURTHER ORDERED that the Clerk of the Court is directed to remove this case from the docket of this Court.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 5|16|25